385 A.2d 423

**COMMONWEALTH of Pennsylvania**

v.

**Victor C. BRAITHWAITE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1976.

Decided April 13, 1978.

448

Alan P. Marian, Harrisburg, with him George W. Gekas, Harrisburg, for appellant.

John M. Eakin, Mechanicsburg, with him Edgar B. Bayley, District Attorney, Carlisle, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

On September 30, 1975, appellant was declared guilty by a jury of conspiracy to commit burglary. After denial of his timely post-verdict motions for a new trial and in arrest of judgment, appellant was sentenced to serve a term of three to twelve months in the Cumberland County Prison. Appellant now contests the propriety of his conviction, raising several allegations of error. We find no merit in appellant's contentions and therefore affirm the judgment of sentence.

Appellant first contends that his right to a speedy trial under Pa.R.Crim.P. 1100 was denied.[1] Appellant predicates this contention on the following facts. On March 10, 1975, a commercial establishment in Cumberland County was burglarized. Four criminal complaints based upon this incident were ultimately lodged against appellant. The first complaint, charging appellant with burglary, was filed on March 10, 1975, the date of the alleged crime. This complaint was dismissed by a local magistrate on April 16, 1975. Appellant was also charged in a complaint filed March 20, 1975, with abetting a theft. A third complaint, charging appellant with burglary and conspiracy to commit burglary, was lodged on April 17, 1975. On May 21, 1975, the second and third complaint were withdrawn by the affiant, Corporal R. C. Blosser, Jr., of the Hampden Township Police Department, and a fourth complaint, charging appellant with conspiracy to commit burglary, was filed. Appellant's conviction accrued from the fourth complaint. On September 19, 1975, appellant applied to the court below for an order

1. Pa.R.Crim.P. 1100(a)(2) provides that: "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

dismissing the charges because trial had not commenced within 180 days from the filing of the first complaint. After a hearing, the court below denied the appellant's petition to dismiss. Trial commenced on September 29, 1975, well within the 180 day period from the date of the fourth complaint.

We find the instant situation to be controlled by our decision in *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976). In *Mumich*, we held that the prescribed period of Rule 1100 commenced with the filing of a subsequent complaint when an initial complaint had been properly dismissed by a magistrate. We tempered our holding in *Mumich*, however, with the recognition that the prompt trial period would attach from the date of the second complaint only if (1) the first complaint was properly dismissed and (2) the record fails to reflect an improper prosecutorial design to circumvent the mandate of Rule 1100. Here, as in *Mumich*, the record fails to show that either the appellant or his attorney objected to the dismissal of the complaint by the magistrate. We must therefore assume that the magistrate did not abuse his discretion in dismissing the complaint. Since the complaint was properly dismissed by the magistrate, the Commonwealth was not precluded from filing a new complaint. *See* Pa.R.Crim.P. 150(b); *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975). Moreover, the record does not demonstrate ". . . any impropriety by the district attorney's office in this case to avoid the mandate of Rule 1100." [2] *Commonwealth v. Mumich, supra*, 239 Pa.Super. at 212, 361 A.2d at 361. Since appellant's trial timely commenced after the filing of the complaint on May 21, 1975, we hold that appellant's rights under Rule 1100 were not violated.

**2.** The instant case is therefore distinguishable from *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976), in which the Pennsylvania Supreme Court ruled that the entry of a *nolle prosequi* on the motion of a district attorney does not toll the running of the prescribed period. In *Whitaker*, the court reasoned that ". . . the prosecution's motion for a *nolle prosequi* pursuant to Rule 314 was simply an effort to gain an extension of the time period during which it was required to bring appellee to trial." *Id.*, 467 Pa. at 443, 359 A.2d at 177. No such effort on the part of the prosecution is apparent in the instant case.

Appellant also contends that the court below abused its discretion in refusing to admit into evidence certain photographs intended by the defense to impeach the testimony of several Commonwealth witnesses. Appellant's position is not tenable.

At trial, two undercover security agents testified that they had been assigned by a security agency to survey the premises of the Pennsylvania Outlet Mall (Mall) in an effort to detect suspected criminal activity. On the night of March 9, 1975, the two agents, situated in a parking lot of a commercial enterprise adjacent to the Mall, observed appellant enter the Mall to begin his shift as a night guard. Early the next morning, the agents observed two men drive a white Chevrolet van to the front entrance of the Mall, repeatedly flash their headlights onto the glass entrance doors, and then drive from the parking lot. The men, however, soon returned, alighted from the vehicle, and were admitted into the Mall by appellant. Several hours later, one man exited the Mall and drove the van to the rear of the building. The agents followed the van and saw a man loading a cardboard box into it. As the agents apprehended the man, the back door of the Mall slammed shut. When local police later arrived and arrested appellant, he was alone in the building.

Appellant attempted to introduce at trial certain photographs of the front entrance of the Mall which were taken from the parking lot where the agents observed the alleged crime. By introducing these photographs, appellant wished to discredit the testimony of the two agents as to their ability to observe the individual who opened the front door of the Mall. One of the agents, however, testified that the photographs, taken in September of 1975, neither corresponded exactly to the angle from which he made his observations nor did they accurately reflect the actual lighting present on the night of the crime. The trial court refused to allow the photographs into evidence, explaining that a verbal description of the difference in lighting be-

452

tween the photographs and the night in question[3] would serve only to confuse the jury. The lower court further reasoned that any benefit which the jury would receive by viewing the physical layout of the scene would be negated by the misleading nature of the photographs as to lighting.

█ "Our law is well-settled that the admission of such evidence is a matter within the discretion of the trial judge and, absent an abuse of discretion, there is no reversible error." *Commonwealth v. Scaramuzzino*, 455 Pa. 378, 381, 317 A.2d 225, 226 (1974). In determining whether the lower court's action constituted a clear abuse of discretion, we recognize that:

"[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." *Man O'War Racing Ass'n, Inc. v. State Horse Racing Comm.*, 433 Pa. 432, 451, n. 10, 250 A.2d 172, 181, n. 10 (1969), *quoting Mielcuszny v. Rosol*, 317 Pa. 91, 93–94, 176 A. 236, 237 (1934).

█ In the instant case, appellant presented the photographs not ". . . merely for the purpose of visualizing the appearance and location of the various objects in the area," *Commonwealth v. Pitts*, 450 Pa. 359, 366, 301 A.2d 646, 650 (1973), but rather to impeach the agents' testimony as to their ability to observe and identify appellant. The agents' angle of sight and the luminosity of the scene undoubtedly constituted elements of primary significance to a challenge to the agents' testimony. The photographs, however, failed to portray either element accurately. It is well settled that:

"'A photograph must be verified either by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately

---

**3.** The agents testified that the photographs depicted a much darker view of the Mall entrance than that which they experienced on March 9.

represents the object or place reproduced as it existed at the time of the accident, or if there is a difference or change, the difference or change is specifically pointed out and is readily capable of being clearly understood and appreciated by the jury: (citations omitted)' " *Woods v. Pleasant Hills Motor Co.*, 219 Pa.Super. 381, 388, 281 A.2d 649, 652 (1971), *quoting Nyce v. Muffley*, 384 Pa. 107, 111, 119 A.2d 530, 532 (1956).

In applying this law to the facts of this case, we conclude that the difference between the lighting conditions reproduced in the photographs and those existing at the time of the crime is not capable of being clearly understood by a jury. The photographs, therefore, had no probative value to impeach the testimony in question, and their offer was properly refused.

Judgment affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

Between March 10 and May 21, 1975, four separate complaints based on the same criminal episode were filed against appellant. The majority, relying on our decision in *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976), holds that the 180 day period prescribed by Rule 1100 commenced with the filing of the fourth complaint, and that therefore appellant was brought to trial in time. I dissent. *Mumich* is distinguishable. When this distinction is understood it is seen that both our decisions in *Mumich* and the Supreme Court's decision in *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976), require that the 180 day period be computed from the filing of the first complaint.

-1-

A restatement of the facts will be helpful. On March 10, 1975, the Pennsylvania Outlet Mall was burglarized. On the same day Officer Willard Leavelle filed a complaint against appellant charging him with the burglary, and appellant was arrested. On March 20, Officer R. C. Blosser, Jr., filed a second complaint against appellant, charging him with abetting retail theft incident to the burglary. On April 16, a preliminary hearing was held on the first complaint, and the complaint was dismissed because the Commonwealth failed to establish a prima facie case. Pa.R.Crim.P. 141(d), 143(a). On April 17, Officer Blosser filed a third complaint against appellant, again charging him with the burglary and adding the charge of conspiracy to commit burglary. On May 21, at Officer Blosser's request, the second and third complaints were withdrawn and Officer Blosser filed a fourth complaint against appellant, again charging him with conspiracy to commit the burglary.

On these facts the majority states:

*Here, as in Mumich, the record fails to show that either the appellant or his attorney objected to the dismissal of the [first] complaint by the magistrate. We must therefore assume that the magistrate did not abuse his discretion in dismissing the complaint. Since the complaint was properly dismissed by the magistrate, the Commonwealth was not precluded from filing a new complaint. See Pa.R.Crim.P. 150(b); Commonwealth v. Hetherington, 460 Pa. 17, 331 A.2d 205 (1975). . . . Since appellant's trial timely commenced with the filing of the [fourth] complaint . . . , we hold that appellant's rights under Rule 1100 were not violated.* Majority opinion at 450 (emphasis added).

Contrary to this statement, the present case is not "as in *Mumich.*" In *Mumich* the first complaint was dismissed by the magistrate at the preliminary arraignment because the signature of the prosecutrix-affiant did not appear on the defendant's copy of the complaint, Pa.R.Crim.P. 132, and within a month a second complaint was filed, which resulted

in conviction. A majority of this court treated the defect in the first complaint as if it were "substantive" rather than "informal". *But see Commonwealth v. Mumich, supra*, 239 Pa.Super. at 213–214, 361 A.2d at 361–362 (1976) (Dissenting Opinion by Speath, J.). Where the defect is substantive, the complaint must be dismissed unless the defendant waives the defect, but a new complaint, with the defect corrected, may be filed. Pa.R.Crim.P. 150(b).[1] Therefore, said the majority:

> According to Rule 150(b) there is nothing improper with filing a new complaint. We read Rule 1100 on prompt trial as applying to complaints properly filed and not to defective complaints that are dismissed. Id., 239 Pa.Super. at 213, 361 A.2d at 361.

Here, however, the first complaint was not dismissed because it was defective—either "substantively" or "informally." Instead, it was dismissed because the Commonwealth did not establish a prima facie case at the preliminary hearing.

The importance of this distinction between *Mumich* and the present case is this. In *Mumich* the majority said:

> [T]he record fails to show any objection by appellant or his attorney to the dismissing of the complaint because of the defect. We interpret this as an acquiescence in the procedure employed by the magistrate. 239 Pa.Super. at 212, 361 A.2d at 361.

With "acquiescence" found, the conclusion followed that the Rule 1100 period had not started to run. Here no "acquiescence" can be found, for under Rules 141(d) and 143(a), the district justice *had* to dismiss the first complaint: his decision to dismiss was compelled by the Commonwealth's failure to establish a prima facie case; it was not a decision

---

1. Pa.R.Crim.P. 150(b) provides:

   If a complaint, citation, summons or warrant contains a substantive defect, the defendant shall be discharged unless he waives the defect. Nothing in this rule shall prevent the filing of a new complaint or citation and the issuance of process in which the defect is corrected in a proper manner.

with respect to which appellant had any say, whether by way of acquiescence or disagreement.

Therefore, *Mumich* is distinguishable because the dismissal there turned on whether the complaint itself was defective whereas here the dismissal turned on the Commonwealth's failure to establish a prima facie case. It could be argued that this difference alone requires that the period prescribed by Rule 1100 be computed from the first complaint because "[w]e read Rule 1100 . . . as applying to complaints properly filed and not to defective complaints that are dismissed." *Commonwealth v. Mumich, supra,* 239 Pa.Super. at 213, 361 A.2d at 361. Here, the first complaint was "properly filed" and not "defective."

However, it is not necessary to decide this point, because, as the majority points out:

> We tempered our holding in *Mumich* . . . with the recognition that the prompt trial period would attach from the date of the second complaint *only* if (1) the first complaint was properly dismissed *and (2) the record fails to reflect an improper prosecutorial design to circumvent the mandate of Rule 1100.* Majority Opinion at 424 (emphasis added).

Therefore, under *Mumich* the prescribed period will be computed from the filing of a complaint filed after the first complaint *only* if two conditions are met. In other words: unless both of these two conditions are met, the period must be computed from the filing of the first complaint. What the majority fails to recognize is that here the second condition was not met. Thus, by the majority's own statement of *Mumich,* the period should be computed from the filing of the first complaint.

To be sure, the majority *says* that the second condition of *Mumich* was met because

> . . . the record does not demonstrate " . . . *any impropriety by the district attorney's office* in this case to avoid the mandate of Rule 1100." *Id.,* at 450 (quoting *Commonwealth v. Mumich, supra,* 239 Pa.Super. at 212, 361 A.2d at 361) (footnote omitted, emphasis added).

I agree that the record does not demonstrate "any impropriety by the district attorney's office." However, whether there is "an improper prosecutorial design to circumvent the mandate of Rule 1100" cannot be determined in every case by scrutinizing only the conduct of the district attorney's office. In *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977), the Commonwealth argued that the period prescribed by Rule 1100 should be computed from the date of preliminary arraignment where arrest was made pursuant to warrant because (said the Commonwealth) " . . . Rule 1100 addresses itself to the prosecutorial officers and not police". *Id.*, 472 Pa. at 562, 372 A.2d at 830. The Supreme Court responded:

> The argument is devoid of merit. When the police file a complaint they initiate criminal proceedings against an accused, Pa.R.Crim.P. 101, and thus *are clearly prosecutorial officers. Id.* (emphasis added)

Here, the parade of complaints filed by the police is evidence, at the very least, of a thoughtlessly managed prosecution. Under the majority's reasoning, by virtue of this thoughtlessness the Commonwealth gained an additional period of seventy-two days within which to bring appellant to trial.[2] Yet during that period appellant was continuously under threat of prosecution. In my opinion, the successive complaints that were filed by the police[3] in this case, based as they were on the same incident, "reflect an improper prosecutorial design to circumvent the mandate of Rule 1100."[4] Thus I would hold that the second condition speci-

2. This is the number of days between the filing of the first complaint, on March 10, and the filing of the fourth complaint, on May 21.

3. Another distinction between *Mumich* and the present case is that in *Mumich* the complaint was a private complaint, which must be approved by the district attorney before it is filed. Pa.R.Crim.P. 133(B)(i).

4. In addition it should be noted that the procedure followed here, of submitting, then withdrawing, and then resubmitting, the complaints, was illegal. Pa.R.Crim.P. 151 provides:

> In any court case pending before an issuing authority, the affiant, with the approval of the attorney for the Commonwealth, may

fied by *Mumich* has not been met, so that the period pre-scribed by Rule 1100 must be computed from the filing of the first complaint.

-2-

By way of a footnote the majority asserts that *Common-wealth v. Whitaker, supra,* supports its determination that the second condition of *Mumich* was met. Thus the majority says:

> The instant case is . . . distinguishable from *Com-monwealth v. Whitaker [supra,]* . . . In *Whitaker,* the court reasoned that " . . . the prosecution's mo-tion for a *nolle prosequi* pursuant to Rule 314 was simply an effort to gain an extension of the time period during which it was required to bring appellee to trial." *Id.,* 467 Pa. at 443, 359 A.2d at 177. *No such effort on the part of the prosecution is apparent in the instant case. Id.,* at 450, n. 2 (emphasis added).

This distinction is without merit, for the Supreme Court's decision in *Whitaker* does not require that the prosecution's conduct be an "apparent" attempt to circumvent the man-date of Rule 1100.

The facts of *Whitaker* are important to understanding the language quoted by the majority. Two days before the period prescribed by Rule 1100 expired, the prosecution filed a motion for a *nolle prosequi* on the ground that there was no admissible evidence with which to prosecute the case. The motion was granted. A month later the prosecution filed a motion to vacate the *nolle prosequi,* arguing that the entry of the *nolle prosequi* had tolled the running of the prescribed period. As the majority points out, the Supreme Court rejected this argument, stating that " . . . the

withdraw the prosecution by setting forth in writing the reason for the withdrawal.
There is no suggestion in the record that Officer Blosser set forth in writing his reason for withdrawing the prosecutions initiated by the second and third complaints. This illegality is by itself sufficient reason to find improper prosecutorial design.

prosecution's motion for a *nolle prosequi* . . . was simply an effort to gain an extension of the time period during which it was required to bring appellee to trial." However, it is clear from a careful reading of the Court's opinion that the Court did not mean to suggest by this statement that the decision whether there has been a violation of a defendant's right to a speedy trial depends upon proof of bad prosecutorial motive. Quite to the contrary, the Court made it plain that under Rule 1100, proof of prosecutorial motive is irrelevant. The Court stated:

> The test mandated by Rule 1100 is the only test to be applied in Pennsylvania to determine a speedy trial claim. It was not meant to be applied in addition to *Barker's* "balancing test." It represents this Court's determination that the "balancing test" . . . provides only the "minimum standards guaranteed by the Sixth and Fourteenth Amendments," and that such minimum standards are not adequate to provide Pennsylvania criminal defendants the protection guaranteed by the constitution of this Commonwealth. See Pa.Const. Art. I, Sec. 9. *Id.,* 467 Pa. at 442, 359 A.2d at 176.

Thus, unless the prosecution gains additional time under one of the exceptions provided in Rule 1100, Pa.R.Crim.P. 1100(c) and (d), a defendant must be brought to trial within the prescribed period. *Commonwealth v. Shelton,* 469 Pa. 8, 13, 364 A.2d 694, 697 (1976).

In this case there are no periods excludable under the exceptions. Accordingly, the period prescribed by Rule 1100 started to run on March 10, 1975, when the first complaint was filed. Appellant should therefore have been brought to trial by September 8, 1975. He was not brought to trial until September 29.

The judgment of sentence should be vacated and appellant discharged.

HOFFMAN, J., joins in this opinion.